case of PBT Real Estate v. Town of Palm Beach. v. Town of Palm Beach case of PBT Real Estate v. Town of Palm Beach. is the representative for PBT, Mr. John O'Neill. So Florida promises its citizenry two things. First, that there won't be a tax by a local government that's not an ad valorem tax, and that when the local government passes an ad valorem tax, that that ad valorem tax is of the citizenry in that local government. The other promise that Florida makes is that in the event that the local government is going to impose a special assessment on property, that the local government will establish that the property will be receiving a special benefit commensurate with that special assessment. And from those two promises, this case arises. PBT has alleged a substantive due process claim, an equal protection claim, and Florida's taking claim. So I'm going to address those in turn, and because there's several issues, I'm not exactly sure what might interest the court. So I'll go through them in order, unless the court has a different direction it'd like me to go. So first, substantive due process. The 11th Circuit has made decisions, especially with the Restagouche case, which is cited by the town, that says that a local government can pursue a special, I'm sorry, can engage in a legislative act that's for legitimate government purpose so long as it's seeking to achieve a goal that the town could achieve. Now, I don't think there would be any dispute that a local government cannot seek to impose an assessment that doesn't also confer a special benefit. I think that would be pretty plain from the way the law is in Florida. A Florida state law? Florida state law. So substantive due process after the McKinney case, as decided by this court, is if the substantive due process claim requires there be a legislative act, and the PBT and the town don't dispute that the special assessment in this case constitutes a legislative act. So therefore, we move on to the next level, which is, is it a legitimate government interest? And the district court decided that the question wasn't the genuine issues of fact that we laid out in response to the motion for summary judgment, regarding different benefits that purportedly were conferred upon the property in this matter, but instead, is it a legitimate government interest to confer a special benefit? I'm sorry, is it a legitimate government interest to institute a special assessment that is going to pro rata allocate the cost associated with the project to the different property owners in the town? The answer to that has to be no, because the test under Florida law requires that there be a special benefit conferred on the property. So the court never analyzed whether there were genuine issues of fact regarding the special assessment and the special benefits that we disputed are conferred on the property, but instead, the court said, as a matter of law, you haven't gotten past that question of whether there's a legitimate government interest. And I will tell you that the state of Florida has not decided this issue. The 11th Circuit really hasn't either. There's a district court case in Georgia. Other states have addressed this issue and said that it cannot be a legitimate government interest to take and impose an assessment on property that would also violate the state law from which that power to assess arises. So the issue on the substantive due process case, as it relates to genuine issues of fact on this motion for summary judgment, was never really decided. The court skipped past that. The next point is the equal protection case. Now, the Supreme Court in the Allegheny cold matter decided an issue regarding taxation in a state on property related to the town's valuation of that property. And the town only reassessed property for purposes of taxes in Allegheny when the property sold. The Supreme Court said that, no, that doesn't cut it. The passive act by the by the executive not trying to evaluate the property was not sufficient to protect the equal protection rights of the property owners. Here, the special assessment that was enacted specifically identified what we identify, what we call the comparators, several communities that had their property under their utility lines and their property undergrounded specifically identifies those properties as receiving the same or similar benefits as every other property that's located in the town. But instead of allowing the instead of enforcing the legislation that or the ordinance, instead of enforcing the ordinance as written, the town decided we're not going to impose the special assessment on these properties, on these communities, because they're already getting a special assessment for those communities themselves. But that wouldn't... Doesn't that fact right there tell you that they're not similarly situated? That the comparators already have a special assessment against them, which your client does not? Well, so there's two points I'd like to make in response to the court. That tells me that there's some difference, but whether that difference is substantial as it relates to the analysis that's going on. Well, the question is whether or not an objective decision maker would take that into account. Well, that would be true, except the legislation specifically identifies those properties, those communities as receiving a special benefit, the same type of indirect special benefit that PBT is receiving. The idea of drawing similarly situated boundaries means that you can, in the Allegheny case, the court could have drawn the boundary as properties that were sold. But when you talk about Florida law and it says that under Florida law, a special assessment has to confer a benefit, and now you're saying that these comparators have the same special benefit that PBT receives. But now you want to say that there's a special assessment imposed on those properties and therefore that makes them different. The bottom line is that special assessment didn't account for any payment to cover the cost of the benefit that the special assessment for the project was being conferred. So there is nothing in the legislation that accounts for that special benefit. And you can always draw the purpose of the similarly situated, you can always draw the boundary very narrowly or you can draw it very broadly. The difference is that here the legislation specifically drew the boundary around those communities and said they're receiving benefit and they should pay. As a matter of fact, their expert, the town's expert specifically said, they receive a benefit and they pay. The question would be whether or not they pay more. Not pay to start with, but to pay more. I guess that's the point I take with the court's question. It's not pay more, right? Because the findings of fact, as the town's going to argue, have to be deferred to by this court. The town specifically identifies that those communities receive this benefit separate from whatever benefits that they are paying for in the special assessment. Because if they were paying more for the special assessment than the benefit they were receiving, it would be under Florida law unconstitutional. Because the benefit has to be equal to or greater than the amount you're being assessed. So they're not paying more. In fact, they're actually paying less because they're receiving a benefit from the community that they're not having to pay for, which the legislation specifically finds is a matter of legislative fact-finding. And therefore, Your Honor, I would say that they're not paying more. I guess your answer would be they're getting more. They're getting more for less. And so they should have to pay more. Well, I don't think they should have to pay, but I don't think PBT should have to pay either, Your Honor. So the fact of the decision by the town to not have them pay means that they treated PBT differently than those communities that are having their lines undergrounded just like PBT did. The only difference is PBT, the property, the condominium association, had it done through their own costs of whenever they did it through private action. And the town is paying and advancing the work to do it for those other communities. And so based on that, Your Honor, we would say that the disputed issues of fact regarding what benefits were conferred and what issues arise related to those properties mean that there's a genuine issue of fact regarding the equal protection claim. And finally, the court disposed of the state law claim. And the state law claim, the court didn't find that PBT failed to allege fact sufficient. The court found that PBT failed to allege a legal theory. And the United States Supreme Court said that's really not the burden from an allegation standpoint. And instead, you have to allege fact sufficient to state a claim. And that claim is stated. We cite the statutes and the Constitution. We also cite the expert's report, which recites the law that it relied on for instituting a special assessment. And therefore, the court disposing of that matter on the motion to dismiss, despite meeting the allegation requirements stated in Twombly and Iqbal, was error. I had trouble trying to figure out what the theory of count three was, the state law claim. And it seems to have been interpreted throughout the litigation as a takings claim. Correct. Is that basically what- It is. Okay. Yeah, it's a takings claim under Florida law, which is a unique takings claim where a special assessment is imposed on property where the benefit is not conferred. But isn't there some case law that a special assessment cannot constitute a taking? Am I wrong about that? Not in Florida law. My understanding of Florida law is that when a special assessment is imposed on property and it doesn't have a commensurate benefit, either a benefit at all, special benefit recognized under Florida law, in other words, an ad valorem tax in disguise, or where the benefit conferred is less than the amount of the special assessment it constitutes a taking under the Florida Constitution. And with that, Your Honor, I would respectfully request two minutes on rebuttal, as I reserved in advance, unless you have any other questions. I will be happy to hear from you. Thank you. Mr. Stewart. May it please the Court. My name is Greg Stewart on behalf of the Town of Palm Beach. This litigation is unusual. It is basically a state court challenge of a home rule revenue source adopted by the Town of Palm Beach but packaged under a substantive due process federal claim matter. What the appellate has sought to do throughout this litigation is to utilize the state court test for a valid special assessment as a substitute for the federal standard of a substantive due process claim. As the trial court repeatedly indicated through its orders, the test for a substantive due process is, does the legislative act rationally related to a legitimate governmental purpose? And conceivably, does the legislative action fulfill that or could fulfill that legislative purpose? The test for substantive due process is not whether there's a special benefit and it's fairly apportioned as a special assessment. If that's the case, then every home rule revenue source in the State of Florida from impact fees to fees to special assessments is now a federal case and that is not the law. In the present case. Let me interrupt you just a second. Yes, sir. And I'm sorry to do so. When you say and talk about legislative acts, obviously the first question is the legislation that just established for everybody that there's going to be a special assessment so we can harden our utilities and improve them. But somehow that seems to have gotten transitioned into the question of whether or not as it impacts this one particular person, is it a legislative act? And I'm not sure that's the question. Well, there is. Maybe you agree it is. Well, that was an issue within the, at the trial court in terms of what is the nature of the special assessment in this case. And as you stated, the town has adopted various ordinances and then those are in fact implemented by specific resolutions that in fact would dictate how that assessment would be applied to different types and categories of properties. And so the issue, frankly from our perspective at the trial court, was it appears that it may be executive in function. Yes, it is adopted, the actual determination as to what PBT should pay is adopted by the town council through resolution, but it is more of an application mode as opposed to the authorization to impose the assessment itself. You know, when you see litigation of similar nature, generally involving zoning activities, when you start looking at how the general rule applies to the individual property, that is more frequently characterized as an executive decision, although in this case it doesn't fit neatly. Well, I think that was the concern that we had is that we felt that, yes, it may be an executive action and it possibly could be. However, we felt on a legislative level itself, there was not a substantive due process claim. And so we were trying to kind of walk that line, to be honest, Judge. Well, it's hard to answer that last question without somehow distinguishing or defining exactly what we're looking at to answer the question. Well, there is no question that at a property level analysis, there is the application of a legislative policy and adoption to that property, which has been and frequently is classified as executive action. But the line is a little gray, to be honest, Judge. But in this particular case, though, as far as the legislation itself, the actual adoption, what is intended to be accomplished here, is the undergrounding of the utilities. And clearly the adoption of an ordinance that would require mandatory undergrounding and fund it through assessment is in fulfillment of a legitimate government purpose. There were numerous studies of record of showing safety benefits that would be derived. There would be efficiencies and reliability would be enhanced by undergrounding and aesthetics within the town. All of those factors have been deemed to constitute legitimate subjects of legislative action in the past. Similarly, the method of funding through a special assessment is really part and parcel of the underground, and it is consistent with that approach. The intent of a special assessment is that properties that receive a benefit should pay for it as opposed to the community as a whole. Now, finally, our counsel had referenced that the town council made numerous legislative findings, both as to these benefits, which will be derived from this program, and the benefits to the properties such as PBT. Those are entitled to deference by the court. The court should not second-guess the legislative function of the town council of Palm Beach. Now, I don't think that appellate contests the legitimate government function or purpose from the ordinances. I think ultimately they just don't want to pay the assessment. But even under state law standards, and it's important that we distinguish the state law standard from what a substantive due process claim should be analyzed under, this assessment meets the test of state law. Can I ask you about that? Yes. Sorry. So Judge Middlebrooks, who's really a great judge, says in his order, plaintiff simply fails to allege the constitutional or statutory provision giving rise to this cause of action. But when I look at count three, maybe, I guess, particularly paragraph 87, it's pretty clear to me what the cause of action is, the legal theory for the cause of action. Well, let me address the question of count three on the state taking. Now, contrary to counsel's position, there is no state taking for special assessments in the state of Florida. Well, apparently there's a disagreement between the two. He sure does. And the district court didn't decide it. Well, I think that the way I would look at count three is that in Florida, they have adopted the same federal standards for takings as the federal courts. And we cited the case of St. John's Water Management versus Kuntz. That eventually went to the U.S. Supreme Court. And in that case, the court held that you cannot have a taking where there is a system general-wide ad valorem taxes or assessment program, that that cannot be a basis for a taking under Fifth Amendment claims. It is also not a basis under state court. What we're really looking at is that if you have a special assessment and you are contesting it as failing to meet the special benefit test or the fair apportionment, whatever it may be, your remedy is to contest the validity of the assessment itself. It does not constitute a taking. That is a separate and distinct analysis. And so all of this discussion concerning, you know, we're contesting the special benefit and therefore that's a taking. That's not the case in Florida. Because if in Florida, just as it is in the federal court, you're going to have to have a deprivation of all economic viable use or investment-backed activities. Those are not the standards that are analyzed in a special benefit. So if you contest a special benefit and you prevail, there is no taking because the assessment goes away. If you contest the assessment and you lose, then you lose on the taking because the standard in Florida is that, in fact, the benefits cannot exceed the burden for a special assessment. And if you can show that they do, there is no taking. So we would suggest under count three that it is trying, again, to package an assessment challenge in the mantle of a taking. And in Florida, that is not the case. The case is cited by counsel in his brief where they weren't decided on takings. There was language that talked about takings from the 30s or 40s prior to the 1968 Constitution and the home rule power that has been granted to counties and cities under the 1968 Constitution. So, frankly, there is no taking for an invalid special assessment, contrary to what counsel says. Let me ask you a procedural question about that. It is count three in the third amended complaint. Was there a motion made by you to eliminate that count? In other words, the argument, I think I remember plaintiff making, was that the motion was for summary judgment on the federal claims, but there was not a motion pending on that count three state law claim. No, there was a motion to dismiss filed on the state. When the third amended complaint was filed, and there was a little bit of a gap that the court had dismissed the second amended complaint, dispositive motions were due three days, but they gave counsel seven days to do the amended. So when the third amended complaint was filed, we immediately filed the summary judgment. We then filed a separate motion directed to the motion to dismiss the count. Thank you. One thing I do want to kind of get back a little bit to the special assessment, that why we believe that that clearly satisfies the standard under state law. Even if a property has underground utilities for its own site, or the line that is going to that property is underground, there is a benefit from redundancy by having all of the systems, and there were four separate lines to the town of Palm Beach that were established that showed power was provided, and that just having all of those access lines into the grid available provides the ability to have alternative services in the event that the primary line serving PBT fails. That's a benefit. That's a special benefit. Safety is enhanced. Even if there are no poles immediately adjacent to the property, emergency vehicles have to get to that property to provide service. And so the fact that there is a broad area that has no poles, it could be down in a storm to keep emergency vehicles, that is a real benefit to the properties. In this particular case, there were poles within two blocks of PBT, as established in the record. So the idea that they are this island with no poles is simply not true. They also, the aesthetics, which is a significant component, are enhanced by the elimination of these poles. So the problem that Appellant has in his special benefit analysis is that he seeks to analyze himself as an island. And if it is not solely related to his property and on site, that special benefits do not count. That's not the law in Florida. You look at the totality of benefits that are applied, and that extends far beyond. And so all of the benefits, he may derive a special benefit from a variety of removal of poles or undergrounding of lines that are not on his property, but he still gets a real special benefit. The other aspect of it is that the methodology adopted by the city, or by the town, excuse me, for the funding of the special assessment takes into account the fact that he is on site undergrounding. And that's why his assessment is so low. It's $293.33 a year, because that is factored in. The town recognizes that certain properties have undergrounding, and they address that in the calculation of the formula. On the equal protection, I would reiterate, Judge Schock, what you were saying is that the proposed comparators are not substantially similar. This project has been ongoing since 2006-2007, and the city has been working, or the town has been working on this. However, they have elected not to go forward immediately on the town-wide project, but they offered individual areas if they wanted to, and their property owners within that area agreed, they were willing to, in fact, go forward. And these areas that are cited as comparable do, in fact, they requested service. They pay the same assessment. They pay the same methodology. It is on their tax bill. The significant difference is timing. They went first before the town-wide system. Now, there is an adjustment. I'm sorry to interrupt you. The special assessment against the comparators is based on the presumption at that time that the whole town was going to be assessed. I inferred that I misspoke, because what their assessment was done on the same calculation, but the cost that was applied to those properties was what, for undergrounding of those properties. It didn't calculate what each property within the town would pay. If you took the total cost and spread it across all of the properties within the town, it looked at what it would cost to actually underground that area's utilities, and they paid only that cost. It would seem to me that what they're, this may not even be relevant there, but they're paying an insignificant amount compared to what the other. Well, they're splitting it among a smaller number of properties. So, if it's a million dollars and that's being spread among 20 properties. But the rates are substantially different. Well, no, they're not substantially. The way it worked out is they were close, but there was a separate calculation. And on the last point, in terms of, there was a distinction in terms of some of those costs which were not included simply because the benefit of the town-wide system could not be derived by those properties within a short period of time. And that is a legitimate policy distinction by the town council. We would ask that you affirm the judge's order in all regards. Thank you. Thank you. Briefly may it please the court. Council identified that there are benefits such as redundancy for the utilities. The challenge for the town is that's not part of the legislative findings. Right? So, those benefits that they are purporting to confer are specifically issues of fact that are outlined in our papers. Whether there's redundancy is disputed by AT&T as one of the providers of utilities. So, it's a disputed issue of fact as it relates to this PBT property whose utility lines were undergrounded in 2005 as to whether any of the town-wide project is going to benefit it at all. But isn't AT&T just one of multiple utilities? Right. So, we didn't get to finish our discovery because of the way the scheduling worked out in this case. But FPL provided information that related to its undergrounding and said its lines directly service through the Flagler Lagoon PBT's property.  And again, as council suggested, the other benefits, safety and aesthetics. I would dispute what two blocks means. Flagler Lagoon is on one side of us. The Breakers Hotel is on the other side with its golf course. North is a shopping center and the Flagler Bridge and south is the Flagler Museum which is an estate property. So, from not within ISHOD, are there any lines? And access to this community comes from the Flagler Bridge. Those are facts in the record and they raise genuine issues of fact which the district court never got to because it decided these issues as a matter of law. And therefore, we would request that the court remand the case back to the district court, allow us to go to trial on these issues of fact that require to be tried and reinstate the third claim for the takings briefly. Council is right. A takings results in invalidating the assessment. That's how it works in Florida. There's no compensation.  I went a little over. I apologize. Thank you.